UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                   Case No. 18-cr-20072

D-2 MOHAMED BELAKHDHAR,     HON. ARTHUR J. TARNOW

        Defendant.
_____/

## GOVERNMENT'S SUPPLEMENTAL RESPONSE OPPOSING SUPPRESSION

    The Government, pursuant to this Court's Order, files this supplement to its brief opposing defendant's motion to suppress.

    Under governing case law, Belakhdhar's first traffic stop was valid for several reasons. First, he committed a traffic violation, which gave the Trooper a lawful basis to stop defendant. Second, based on all the facts, the police had reasonable suspicion that defendant was committing a felony drug crime with co-defendant Soto. Also, the police conducted themselves reasonably, and the defendant consented to the search of his vehicle.

    Defendant' second stop was valid because they had reasonable suspicion and probable cause to believe he was an undocumented individual. Also, a positive

1

"dog hit," along with the other facts of this case gave agents probable cause to search defendant's SUV.   The agents found heroin; they also confirmed defendant's undocumented alien status and arrested him.   Agents at that time had probable cause to believe Belakhdhar committed an immigration and a drug crime.   Also, as with the first stop, the police conducted themselves reasonably.

Even if agents lacked a legal basis to search the SUV during the second stop, defendant was arrested; the agents did an inventory search of the vehicle and would have inevitably found the drugs.   Thus, on the basis of inevitable discovery, this Court should deny defendant's suppression motion.

## BACKGROUND

The Government was being assisted in this investigation by a Confidential Source.   The CS stated that he previously got distribution quantities of heroin from "Henry."   The CS stated that Henry drives a black Toyota Camry and is from Chicago.   On January 22, 2018, the CS placed a telephone call (monitored by a DEA Agent) to Henry where Henry agreed to bring over 2 kilograms of heroin to the CS in Detroit for $62,000.00 per kilogram the next day.   The DEA obtained a "ping" warrant on Henry's phone to assist in tracking Henry.

On January 23, 2018, Henry's phone began travelling to Detroit.   Law enforcement officials set up surveillance along I-94 beginning around Benton

Harbor, Michigan.   In a monitored telephone call between Henry and the CS that morning, Henry confirmed that he was bringing "2 and a half" (Kilograms of heroin) and he was on his way.

 An MSP trooper saw a black Toyota Camry on I-94 in Michigan, and the Illinois license plate came back to Henry Soto of Chicago.   The ping information corroborated that this Camry contained "Henry's" cell phone.

Another vehicle – a Toyota RAV-4 driven by defendant Belakhdhar – was driving in tandem with Henry Soto's Camry along I-94.   The RAV-4 and Camry made lane changes together and travelled at the same speed for about 20 miles. The RAV-4 had a paper/temporary Illinois license plate.

The police conducted a traffic stop on the Camry.   Henry Soto was the driver and produced his driver's license; his passenger produced consular identification from the country of Guatemala.   Police conducted a consent search but found no illegal drugs.   However, upon instruction from agents, the CS dialed Henry's cellphone; it rang inside the stopped Camry.

The RAV-4 had continued travelling on I-94 at about 70 mph.   Michigan State Police Trooper Daniels pulled alongside the SUV at which time Belakhdhar slowed down under the minimum speed (i.e., under 55 mph); a violation of the traffic laws.   Moreover, officers/agents suspected that the RAV-4 was involved in transporting over two kilograms of heroin from Illinois to Detroit.   Michigan State

Police Trooper Daniels testified that he was aware that his and other officers' surveillance was connected to a DEA investigation of drugs being transported from Illinois to Detroit for distribution. Daniels was advised to stop the RAV-4. For all these reasons, Daniels did so.

Defendant Belakhdhar was the RAV-4's driver, and he provided identification. The passenger was a woman from Buffalo, New York, who stated that she was just taking a ride. Belakhdhar stated that he was going to visit a friend in the hospital, but did not know the name of the hospital. The two occupants differed on how long they were going to stay in Detroit. Belakhdhar consented to a search of the vehicle but the Trooper did not open any boxes or containers. Trooper Daniels did not handcuff Belakhdhar. Nor did Trooper Daniels brandish a gun. The Trooper found no drugs and allowed the RAV-4 to proceed. Agents and officers continued to follow the RAV-4 into Detroit.

After, the RAV-4 departed that first traffic stop, Border Patrol/Immigration conducted a computer check. Border Patrol did a computer check on each of the occupants of the two vehicles – the Camry and its two occupants and the RAV-4 and its two occupants.

As a result, Border Patrol determined that Belakhdhar was in the U.S. illegally and driving the RAV-4. A marked Border Patrol car/officer stopped the RAV-4 on a side street in Detroit on this basis ("second stop"). A Canine Unit

was present. DEA Agents were near the scene.

Border Patrol Agent Benjamin Wolfe questioned Belakhdhar about his immigration status, but defendant was evasive and did not directly answer the agent's questions about defendant's alien status. Belakhdhar told Agent Wolfe the name of the hospital he was going to but Agent Wolfe testified there was no such hospital. Further, Belakhdhar did not have any immigration documents on his person; Agent Wolfe testified that defendant is required to have such documents with him. The Border Patrol Agent utilized an in-car fingerprint reader to confirm that Belakhdhar was illegally in the U.S. Belakhdhar became tense, nervous and uncooperative.

Border Patrol Agent Reed is a canine handler who was on the scene at the time of the second stop. He testified that he had a trained dog with him (canine "Atos"). Agent Reed testified that his dog was certified to sniff/search for narcotics and persons, and to assist in apprehending individuals who might flee from agents. Reed testified that it was not unusual for him to accompany other agents in the field.

Agent Reed further stated that "masking agents" are utilized by drug traffickers to "hide" the scent of drugs from trained canines. There were masking agents in the RAV-4, including coffee and kitty litter (the presence of which is inconsistent with defendant's story that he was traveling to visit someone in a

Detroit hospital).   Agent Reed also testified that the presence of rain and being along a highway can distract a canine and may result in "false negative" results (i.e., a dog not alerting when drugs are present).   All these factors were present in the first stop.   But this second stop was on a side street.

Canine Atos alerted to the back of the RAV-4 while Agent Wolfe was fingerprinting Belakhdhar.   An agent opened the back hatch of the vehicle, and the dog alerted to a box for a microwave oven.   Agents found that the box held a microwave with multiple kilograms of heroin inside.   Through defendant's fingerprints, Agent Wolfe determined that Belakhdhar was not in the U.S. legally.

Belakhdhar was placed under arrest.   A DEA agent that was at the scene took the RAV-4 back to a DEA building where an inventory search was conducted.

## LAW

Both Police/agents' stops of Belakhdhar were lawful.   Just prior to the first stop, defendant committed a traffic violation.   Agents also had reasonable suspicion to believe that he was part of an ongoing drug conspiracy to transport kilograms of heroin from Chicago to Detroit.   Also, the agents acted reasonably. Hence, the first stop was lawful.

The second stop was also lawful because Border Patrol had both reasonable suspicion and probable cause to believe that defendant was illegally in the U.S.

Also, the "dog hit" at the second stop (together with the other facts of this investigation) gave probable cause to search the RAV-4.  Moreover, the drugs would have been found during the inventory search of the vehicle after defendant's arrest and the RAV-4 was impounded.

<u>Reasonable Suspicion, Probable Cause, and Collective Knowledge</u>

All three of these legal concepts are involved in both of the traffic stops in the instant case.

Police may stop an automobile without a warrant where an officer has reasonable, articulable suspicion that criminal activity is afoot.  *Terry v. Ohio*, 392 U.S. 1, 27 (1968); *Illinois v. Wardlaw*, 528 U.S. 119, 123 (2000).

Reasonable suspicion is a less demanding standard than probable cause. It can be established with information that is lesser in quantity and content than probable cause, and can arise from information less reliable that required to show probable cause.  *Alabama v. White*, 496 U.S. 325, 330 (1990).   An officer must demonstrate that the reason for the stop was not just an unspecified hunch.  *U.S. v, Sokolow*, 490 U.S. 1, 7 (1989)(<u>quoting</u> *Terry*, supra).

A Terry stop is thus proper if it is based on specific and articulable facts with all their rational inferences that suggest the suspect was involved in criminal activity.  *U.S. v. Ramos*, 443 F. 3d 304, 308 (3d Cir.2006).   Courts accord

deference to police/agents' judgment of whether criminal activity is afoot because determining reasonable suspicion is often an imprecise judgment. *Id.* Indeed, facts sufficient for an agent to properly find reasonable suspicion may seem meaningless to persons untrained in law enforcement. *U.S. v. Cortez*, 449 U.S. 411 (1981).

Moreover, courts apply a totality of the circumstances test; they firmly reject segregating individual factors and finding them, in isolation, capable of innocent explanation. *U.S. v. Sokolow*, 490 U.S. 1 (1989); *U.S. v. Arvizu*, 534 U.S. 266, 277 (2002); *U.S. v. Martin*, 289 F.3d 392(6th Cir. 2002).

Probable cause is a somewhat weightier standard than reasonable suspicion, but it is not a high standard. Probable cause is reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion. *U.S. v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). Probable cause is a commonsense standard that is also based on the totality of the circumstances. *Texas v. Brown*, 460 U.S. 730, 742 (1983), *Illinois v. Gates*, 462 U.S. 213 (1983). Analysis of probable cause includes a realistic assessment of the situation from a law enforcement officer's perspective. *U.S. v. Barrett*, 890 F.2d 855, 861 (6th Cir. 1989).

An officer may, as in this case, rely on the collective knowledge of his fellow officers and agents. *U.S. v. Lyons*, 687 F.3d 754 (6th Cir. 2012). Here, the

officers/agents who conducted the stops reasonably relied on the knowledge of the investigating agents and those requesting the stops, even though the responding officers did not know as many of the facts as did the investigating and requesting agents. Id.

## Belakhdhar's First Stop

In the first stop in this case, the MSP Trooper had probable cause to believe that Belakhdhar committed a traffic violation. Trooper Daniels saw defendant commit a traffic violation: Belakhdhar slowed down from 70 mph to below the minimum speed on I-94.

Belakhdhar's traffic violation constituted probable cause for Trooper Daniels to pull the RAV-4 over, even if Daniels' subjective intent included suspecting that defendant was involved in a drug crime. *Whren v. U.S.*, 517 U.S. 806 (1996); *U.S. v. Ferguson*, 8 F.3d 385 (6th Cir. 1993). Even though not required to demonstrate this, Daniels testified that he has ticketed other individuals in the past for that same violation. Whether or not Daniels' stop of the RAV-4 for this traffic infraction is countenanced by department policy, or rarely used, is irrelevant. *Ferguson*, supra. See also *U.S. v. Harbin*, 343 F.3d 807 (6th Cir. 2003)(no ticket given).

During the first stop, officers learned of Belakhdhar's identity. After the first stop, Border Patrol learned of defendant's alien status, which lead to the

9

second stop (and the seizure of his drugs and defendant's arrest for drug and immigration violations, and the impounding and inventory search of the RAV-4). For these reasons alone, the first stop was valid and defendant's motion to suppress should be denied.

Also, law enforcement had reasonable suspicion to believe that Belakhdhar was participating in a felony drug crime at the time of the first stop. Agents knew that a known reliable informant ("CS") stated that he previously dealt kilogram quantities of heroin with "Henry." Henry drove a black Camry car, and came from Chicago to Detroit to deliver large amounts of heroin to the CS. Agents monitored phone calls between Henry and the CS on the day before the traffic stops; and Henry stated that he would bring over 2 kg of heroin the next day to the CS in Detroit.

Ping evidence showed that Henry left Chicago the next day. Agents saw him travelling in a black Camry with Illinois plates on I-94 Eastbound in Michigan (toward Detroit). Ping evidence again confirmed this. Henry again spoke with the CS and confirmed he was on his way with the drugs. This conversation was monitored by DEA. The RAV-4 travelled in tandem with Henry. The 2 cars changed lanes together several times. They travelled at the same speed and were a few car lengths apart (Daniels testified the distance between the two cars was approximately the length of the courtroom where the hearing took place). The

RAV-4 had a temporary Illinois license plate on it. Belakhdhar slowed the RAV-4 down and committed a traffic violation before the stop. Under these circumstances, taken as a whole, the agents/officers had reasonable suspicion to conduct the first stop of Belakhdhar. They had, collectively, reasonable suspicion that Belakhdhar was part of Henry's drug convoy. See *U.S. v. Sharpe*, 470 U.S. 675, n.3 (1985).

In *Sharpe*, an agent saw two vehicles traveling in tandem for 20 miles (just like in the instant case). The vehicles were in an area known to be frequented by drug traffickers, and one of the vehicles (a pickup truck) appeared heavily loaded and its camper top windows were covered by a blanket rather than by curtains. The vehicles committed speeding violations as the agent approached in a marked car (which is similar to what happened with the RAV-4 in the instant case). "Perhaps none of these facts, standing alone, would give rise to a reasonable suspicion; but taken together as appraised by an experienced law enforcement officer, they provided clear justification to stop the vehicles and pursue a limited investigation." *Id*. at n. 3.

The facts against Belakhdhar on the first stop are even more compelling than in *Sharpe*. Here, agents heard Henry state that he was in the process of delivering heroin to Detroit from Chicago to the CS. Henry had done this before. Ping information confirmed his location on I-94, which is where agents/officers saw the

11

RAV-4 traveling in tandem with Henry. Both vehicles had Illinois plates (RAV-4's plate was a temporary/paper license plate). Based on all the facts and the totality of the circumstances, the Supreme Court in *Sharpe* strongly favors denial of defendant's motion. See also *U.S. v. French*, 974 F.2d 687 (6th Cir. 1992), cert. denied, 506 U.S. 1066 (1993), *U.S. v. Rodriguez-Rodriguez*, 550 F.3d 1223 (10th Cir. 2008) (traveling in tandem, traffic violations are factors supporting Terry-type traffic stop); Cf. *U.S. v. Zamudio*, 499 F.3d 1206 (10th Cir. 2007).

Accord, *U.S. v. Collazo*, 818 F.3d 247, 253-54 (6th Cir. 2016); *U.S. v. Simpson*, 520 F3d 531 (6th Cir. 2008)(stop lawful if there is reasonable suspicion of ongoing crime). See also *U.S. v. Lumpkin*, 159 F.3d 983 (6th Cir. 1998) (tip by Confidential Informant with some corroboration provides probable cause to search). In the instant case, there was not just a tip, but telephone calls monitored/heard by agents that "Henry" was bringing over 2 kilograms of heroin from Illinois to Detroit and that he was on his way. This was corroborated by the ping information, tandem travel, and other facts stated above.

The officers acted reasonably during the first traffic stop. Defendant consented to a search of the RAV-4. Officers did not use handcuffs, nor did they draw their weapons.

For all these reasons, the first traffic stop was lawful.

## Belakhdhar's Second Stop

The names of the RAV-4's two occupants (and those of Henry Soto's Camry) were run through a Border Patrol database after Belakhdhar departed from the first stop and Henry (separately) departed from his traffic stop. Thus, after the first stop, agents learned that Belakhdhar was in the U.S. illegally. The second stop was lawful because there was both reasonable suspicion and probable cause to conduct a second investigative stop of Belakhdhar regarding his alien status.

He was fingerprinted by Border Patrol at a squad car, and his fingerprints confirmed that defendant was not in the U.S. lawfully.  Canine Atos, as mentioned above, and his handler were at the second stop.  Belakhdhar did not consent to another search of his car, stating that a prior dog scratched up the interior of the RAV-4.  This was not true; the prior dog did not enter the RAV-4.

Belakhdhar also stated he was going to visit someone in the hospital.  But the hospital name he gave does not exist. His statement and that of his passenger were inconsistent concerning how long they were going to stay in Detroit.

Atos alerted to the RAV-4 for the presence of drugs while Belakhdhar was being finger printed. A positive dog hit from a reliable drug-detection dog such as Atos establishes probable cause to search the entire vehicle.  *U.S. v. Winters*, 782 F.3d 289 (6th Cir. 2015).  The dog hit on Belakhdhar's car in Detroit gave agents a further lawful basis to search the RAV-4 because it corroborated the CS's

information and the aforementioned two monitored drug phone calls, ping information and surveillance set forth above.  *U.S. v. Lumpkin*, 159 F.3d 983 (6th Cir. 1998).  Agents found two kilograms of heroin in the RAV-4.

Belakhdhar was arrested.  At that time there was probable cause to believe both that he committed an immigration and a drug crime.  The car was then impounded; it, Belakhdhar, his passenger, and the drugs were taken to a DEA building (DEA was on scene).  See *Florida v. White*, 526 U.S. 559 (1999)(seizure of vehicle from a public place without a warrant where vehicle was used to facilitate a drug offense is proper).

An inventory search was conducted.  See DEA and Border Patrol policies on Inventory, attached.  The agents could perform an inventory search of the moveable vehicle as its owner/driver was under arrest.  See *Whren v. U.S.*, 517 U.S. 806 (1996) (Inventory search appropriate to secure valuables and protect against false claims of loss or damage).  See also *Illinois v. Lafayette*, 462 U.S. 640 (1983)(no warrant or probable cause requirement where police inventory property they have taken into custody).

This was part of the DEA's investigation of "Henry" and the efforts of him and his co-conspirators to bring heroin from Chicago to Detroit.  Hence, the RAV-4 was brought to the DEA and inventory searched there.  As the attachments and case law indicate, inventory searches are proper to protect agents against false

accusations of impropriety and to secure the property of defendant. The heroin would have inevitably been found during the inventory search. See, e.g., *Whren*, supra; *Nix v. Williams*, 467 U.S. 431 (1984). See also *U.S. v. Vite-Espinoza*, 342 F.3d 462 (6th Cir. 2003) and *U.S. v. Kimes*, 246 F.3d 800 (6th Cir. 2001)(inevitable discovery because of inventory search).

As with the first stop, agents acted reasonably during the second stop. Belakhdhar was not handcuffed until arrested. Agents did not draw their weapons on him.

## CONCLUSION

For these reasons, the Court should deny defendant's motion to suppress.

Respectfully submitted,

*s/ David J. Portelli*
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9100
dave.portelli@usdoj.gov

June 8, 2018

CERTIFICATE OF SERVICE

I hereby certify that on Friday, June 08, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

    Joseph A. Niskar
    niskarlaw@gmail.com

    *s/ David J. Portelli*
    Assistant U.S. Attorney
    211 W. Fort Street, Suite 2001
    Detroit, MI 48226
    (313) 226-9100
    dave.portelli@usdoj.gov
    P40688